The next case we're going to hear is Jose Ramon Puguera Vasquez v. Garland. This is docket number 216380. Good morning, your honors. Good morning. You're going to need to lower it and speak into the microphone. Thank you. Thank you. Good morning, your honors. May it please the court. My name is Alexandra Cunningham and this is Jessica Valenzuela Ramirez. We are clinical students with the Harvard Immigration Clinic under the supervision of Tiffany Liu for the petitioner Mr. Puguera Vasquez. I'll be presenting the argument and Jess will present the rebuttal. The Board of Immigration Appeals held that Mr. Puguera Vasquez's misdemeanor conviction was a crime involving moral turpitude, which, as relevant here, requires a potential sentence of 365 days or longer. The board held so despite the fact that prior to its ruling, New York retroactively lowered the maximum possible sentence for all Class A misdemeanors to be 364 days. As a result, Mr. Puguera Vasquez was deported after nearly 10 years as a lawful permanent resident and separated from his now nine-year-old U.S. citizen daughter. This court should grant the petition for review and vacate the board's decision for two reasons. First, the plain text of the CIMT provision requires that the INA recognize state laws modifying state sentences retroactively. Second, federalism norms bolster this conclusion. Turning to our first argument, the plain language of Section 1227A2AI indicates that the statute contemplates... You don't think there's any ambiguity in the language of the statute as to whether it's backward-looking or present-looking? No, Your Honor. So the statute is entirely present-facing and written in the present tense. It says to look at convictions from within the five years after the entry into the country. Isn't that backward-looking? That may be the case, Your Honor, but that's not part of the provision at issue in this case. So the CIMT provision contains two separate columns. We separate this provision from the first one? That's correct, Your Honor, because that's how the statute has chosen to direct the inquiry. The CIMT provision contains two prongs, one which concerns the conviction and contains the backwards-facing language that Your Honor points to. The only prong at issue here is the second prong, which concerns sentencing. And in that relevant provision, the removal provision applies when the noncitizen is convicted of a crime for which a sentence of one year or longer may be imposed. So the sentencing inquiry is entirely present-facing. But it can't refer to something that's happening right now because the basis of it is something that happened years earlier. I mean, it uses is in the present tense, but isn't it referring to an historic event? That's correct, Your Honor, but even if the inquiry is focused on a past conviction, here where we have a retroactive state statute, that doesn't change the outcome. The effect of a retroactive state statute is it goes back in time and changes the maximum potential sentence as of that time for past convictions. So whether the year is 2022 or 2017, the maximum potential sentence that Mr. Piguet-Obasquez may receive is 364 days. Is there a difference between the ability of the state legislature to do that as a matter of state law and the ability of the legislature to do that with the purpose and effect of altering federal immigration law? The text of the INA does not differentiate between the state legislature's impetus in doing so. So there's no question that applied prospectively, the state legislature's choice of sentencing scheme would be recognized by the INA. Anyone convicted under the law today would receive… That affects certainly things going forward and the INA, I presume, before us, I presume would look at the statute and see what it says. But when you talk about retroactivity, you're talking about altering somebody's immigration status retroactivity by an act of state law. Well, there are many reasons why a state legislature may choose to alter its sentencing scheme and the INA does not differentiate… What reason can you think of that they would drop one day off, 365 days? You're saying many reasons. What's the other reason other than to change people's immigration status? In some instances, lowering the state law may be applicable for employment purposes, as we mentioned briefly in our brief as well. So this may lead to less recidivism, which furthers other purposes within the state. And it's important to note, too, that Congress could have specified that we should only consult the state law in effect at the time of conviction, but chose not to here. Elsewhere in the INA, Congress is very clear when we should consult the state law at a particular point in time. Although in this case, the state law in effect at the time of conviction, if we're to consult New York state law and ask what the state law was in effect at the time of the conviction, it was the 364 days. It's a legal fiction, but it's the fiction that the state of New York has adopted. I don't think this is a question of whether or not we're going to look at the state law now or at the time of the conviction. The question is whether we're going to look at state law at all or whether we're going to create a federal overlay on that by implication. That's exactly right, Your Honor. And this also comports with principles of federalism. For example, in Gregory v. Ashcroft and McCronic, the Supreme Court said that in the absence of a clear statement from Congress, we should not presume that Congress intended to usurp state law. And that's exactly what the federal agency's interpretation in this case does. Well, no, wait a minute. State law governs the state consequences of a conviction of a crime in the state sentence. What action within the realm of the state's purview is an application of the immigration law stepping on? So by failing to recognize the state law for federal immigration purposes and actually using a sentencing scheme that the state has directly and clearly chosen not to apply for federal immigration purposes, there are spillover effects into other areas of state law. And so by meting out deportation consequences based on a sentencing scheme that the state rejected, the federal government is treading on dangerous grounds. Please. The government also argues that the statute is plain and unambiguous, and so you're interpreting it in different ways. Suppose we find that there is some ambiguity in the statute in this respect. Why isn't the agency's interpretation reasonable in light of the Ninth Circuit case, Second Circuit case law, McNeil? Well, Your Honor, we would argue that the Chevron framework would not apply at all to the dual application statute. But if we do apply the Chevron framework in this case, the agency's interpretation is unreasonable for the federalism concerns that I previously stated. It seems the federalism argument really cuts both ways because, as Judge Jacobs was suggesting, perhaps state law is interfering with federal immigration. So to address that in turn and then perhaps turn to McDeal and Diaz, the real federalism concern here is whether we will permit a federal agency to read text into a statute that the Congress has not placed there. And in so doing, override state legislation issued pursuant to a state's constitutionally delegated police powers. And McNeil and Diaz are—I see I'm out of time, Your Honors. May I briefly respond? You can finish your thought. McNeil and Diaz are not on point for this case. In fact, McNeil carves out its holding for a retroactive state statute, which is exactly the case that we have here. Thank you, Your Honors. Thank you very much. Mr. Newell? And you may want to raise that platform. Okay. Yeah, you got it. Never a problem I have. May it please the court. My name is Craig Newell, and I'm here on behalf of the Attorney General. The crime involving moral turpitude, ground of removal at issue here today requires a backward-looking inquiry into the maximum possible sentence at the time of Mr. Pogaro's conviction. And how do we determine that? What law decides what the maximum possible sentence was at the time of his conviction? Federal law or state law? It is state law. So when we look at state law, what does it tell us in this case? Well, the conviction is a historical fact. That historical fact of the conviction happened in 2017. So for both the substantive portion, determining whether his offense is morally turpitude. Isn't state law changing that historical fact? No, it is. Yeah, it is. It's trying to rewrite history. And the state is doing that to undermine this federal immigration removal statute, which is within the plenary authority of Congress and the president, the political branches. Can I ask a question about that? I'm puzzled. So Congress has made a policy judgment. Yes. Instead of having some sort of uniform federal standard that said if you are convicted of the following things, we're going to treat it a certain way. Congress has decided we're going to defer to the individual policy judgments of each state as to the sentencing maximum that it's going to make applicable to certain crimes. And so presumably the very same act from one state to another may cause somebody to be removable or not, depending on that state's policy judgment. So given that Congress has said we're going to rely on a state's policy judgment, why is it somehow offensive to federal immigration framework for a state to exercise its judgment that Congress has decided to defer to to make a change that might have implications for the federal structure? Okay. I understand, Your Honor. What Congress has done with this criminal ground and removal and all of them, really, has made a value neutral judgment as to the fact that we're going to rely on state law. But it has made a value judgment as how we are going to do that inquiry. We're going to do that inquiry by going back in time. And the reason for that, the logic behind that is that the adverse immigration consequence for that conviction happens immediately upon that conviction. You can be convicted one day, then removed the next day. And the flip side is if there's a gap in time between the fact, a person sitting faced with a criminal charge, they need to know the full extent of that consequence of whether I should plead guilty or not to this. And that's why we need to – that's a policy reason why to look back to it. That was – this Court reasoned in that Doe v. Sessions case. If you look at the statute, you can't read that second subparagraph that may be imposed in isolation. It's saying – it says a crime for which a one-year sentence or more may be imposed. But what is that crime? It's the crime you were convicted of. And that crime is discussed in the first subparagraph that says this is a crime that involves a – I'm sorry. This is a conviction that involves a crime that was committed during the specific time frame in the past. This is very similar to the statute, the armed criminal statute that was at issue in the Supreme Court's McNeil decision. There it was the maximum sentence that was – is prescribed by law. And the defendant in that case raised a very similar – no, we do a present-facing inquiry look. But isn't it – I mean, in that case, it was a prospective change to the state sentencing law. Yes. And the notion would be you're not going to look at the sentence available for some hypothetical conviction from some other person at some future time. You're going to look at the actual consequences for the conviction for the person who had it. Right. Where you have the state creating arguably a legal fiction that something was different from what existentially it was at the time, I don't see how we get out of the box of deference to the state law as to what the consequences of that past conviction were. Okay. The thing with that is that – the legal fiction fact of it. If we take – I'm sorry. I'll back up and discuss. This is what I – to adopt a present-facing inquiry where we look at the – we are interpreting the statute as a present-facing inquiry, that would mean that – it wouldn't just mean we look at the present sentence when we have a retroactive state reduction sentence. If the present sentence is now greater or if it's lesser but there is no retroactive function in it, those would all – those would all be the ones we'd be looking at. Right. If we are interpreting these phrases as present tense. So – Now, as to the legal – I'm sorry. No, no. I'm sorry. Okay. And as to the legal fiction, if we – Mr. Pagaro describes this as a non-proton class-wide reduction to all these defendants with Class A misdemeanors. Now, in that context, in immigration law, that would make it akin to what we do when there's a conviction vacator or a sentence reduction. And if we were to get into that realm, the only time that those change the historical fact is when there was a legal defect, a substantive or procedural defect. Here we know this New York statute on its face calls it ameliorative. And if you look at the legislative history, the only thing it's trying to ameliorate is the adverse immigration consequences. Tell me – And that's where the federalism question comes. If a person is found to have committed an offense that justifies removal and the person has been removed, and then afterward it turns out that the premise for that conviction was defective, what happens? Does the government – having paid to remove that person, does the government pay to bring the person back? If, Your Honor, in the circumstance – so if someone – I'm referring to the situation – To Mr. Figueroa – You were just talking about that. Yes, in that circumstance. So say someone who was removed based on a conviction and then he later gets the state court to vacate it because of a constitutional error. He didn't have counsel. Not for a rehabilitative reason or not for that. Then that person would move to reopen and terminate his proceedings. And being a lawful permanent resident, the government facilitates his or her return to the country. The thing is, though – You mean pays? Facilitates? You mean pays for the person's return? Yes. It depends, though, on other circumstances. When you were a lawful permanent resident like Mr. Figueroa was, you're in a different circumstance than someone who has no status. He was a lawful permanent resident. The question, though, is if this court were to disagree with the government, which it shouldn't, but if it does on remand, there's still this aggravated felony forgery ground that would need to be addressed. So he could be removable on that ground. You were both arguing that the statute is as clear as day, but it says opposite things. Right. The government is not invoking a claim of deference to the BIA. We are not. The board made its ruling. We could do that whether you invoke it or not. Correct, Your Honor. I mean, that seems to be the – What about the rule of lenity? I mean, I doubt that Congress was contemplating retroactive amendments in state law, and I think there probably is ambiguity here. Why wouldn't the rule of lenity apply? I don't think you addressed it in your brief. The rule of lenity applies only when there's – the phrase is grievous ambiguity. And here, this is – this is not – there's not this grievous ambiguity. We have – we have – the phrase is convicted. A convicted is a conviction that happened on a particular day in the past, and it tells you that this is for a crime that occurred during this five- to ten-year time period in the past. This is directly parallel to the statutory construction analysis that was done by the Supreme Court in McNeil. Except that McNeil has carved out the question of whether your backward-looking inquiry would take into account the actual state law treatment of that past conviction. I think that McNeil – the footnote in McNeil, it's reading too much into it to say that it's a carve-out. If a federal statute, the interpretation of it needs to be constant. It's not dependent upon the state law being presented in the case. So, for example, if it's a backward-looking inquiry, as we advocate for, then you look back in time and you look there. If it's a present-looking inquiry, we look at the state – if that's how the statute should be interpreted, then we need to look at the state law at the present moment of the removal proceeding. And that could easily be a higher sentence or a lesser sentence without this retroactive effect. The state could have felt it wanted the lower sentence but didn't. I mean is the inquiry whether the person is removable now or whether the person was removable ten years ago? It's back in time ten years ago because that removal consequence attaches at the moment of conviction. Why should that be the case? Because isn't – aren't you – isn't the agency trying to decide whether we should remove him now? To determine whether to remove someone today, you – if that removal is triggered by a crime and conviction, you look back at that time just because time span – time has passed doesn't affect – doesn't affect it. I thought – I thought – perhaps I'm wrong, but I thought you'd argue that because this is unquestionably a crime involving moral turpitude, that is to say possession of a forged instrument which involves deceit and is therefore the basic kind of crime involving moral turpitude, that it – that that alone would justify removal. But that's not how I read the statute. You still have to have the – basically the felonies. You're right. For this – for this removal ground, you need to have the one year as well. The felon one that involves two crimes. I doubt this misunderstood you. Oh, okay. I see that my – I have gone over. Are there any other questions, Your Honor? No, thank you for your argument. Thank you. I appreciate you hearing our argument. Thank you. Appreciate it. We'll hear from Attorney Valenzuela. And you're going to want to lower the – Yes. Thank you. Good morning, Your Honors. May it please the Court. Jess Valenzuela for petitioner. I'd like to make two points on rebuttal. First, the INA defers to state law for sentencing, and there's no textual justification in the INA for refusing to recognize a retroactive reduction in a maximum state federal – a state crime sentence. And can I – there's been a lot of conversation about present-looking versus backward-looking, which I will confess I find an unhelpful framework for this case. Even if we adopt a backward-looking perspective and ask the question, what is the sentence – was the sentence available for this conviction that this person had in the past? If that's the framework we adopt, do you lose? No, Your Honor. The retroactivity of the New York State statute reaches back in time and changes the maximum possible sentence that Mr. Peguero-Vazquez could have been – could have received. The language in the statute, in the INA, the present-facing language is may be imposed. So we're looking at precisely the length of the statute that may be imposed. And when we consider the implications of the state reduction in the maximum possible sentence, it affirms that, in fact, we cannot follow the government's argument. Are you adopting a present-oriented look? We sort of heard the argument. If you're really looking at the present, then you'd look at the current – you wouldn't need the retroactivity provision. You would – even changes in sentencing. Are you taking that position that changes in sentencing apply even if they're not retroactive in nature? Yes, Your Honor. So the INA is present-facing, and we should consider the current state law in the maximum sentence possible. And here, the retroactivity of the New York statute affirms that even if we had a backward-facing prong in the sentencing, that it would still be applicable. If you are correct, then based on what your adversary has observed, a person, maybe many persons, who were removed under perfectly unimpeachable grounds by the immigration folks years ago would have to be returned by the government, the U.S. government. Am I correct? Brought back from their country of origin. Potentially, Your Honor. However, the process to – I mean, anyone who has had any – Potentially means yes. Yes. Yes, Your Honor. Anyone who has had – So isn't that the state of New York imposing upon the federal government an obligation to enforce its immigration laws in such a way as to undo a removal that has been accomplished? No, Your Honor. The state of New York is acting – is exercising their police powers in this case. And anyone who would want to reopen would have to go – But the state's police powers don't include the immigration laws. And the process to reopen their case is already quite an arduous one. Are there – I guess I was wondering, that is, even if you win, somebody who's already been removed, and let's say they've been removed for a certain period of time, are there other obstacles that would stand between them and being brought back? Yes, Your Honor. The process to have a motion to reopen be successful is quite difficult. There are other barriers that folks would still have to address. Are there substantive barriers or just procedural barriers? In other words, are they entitled or would they be entitled if they went through the process, or are there discretionary decisions along the way that may or may not be reviewable? There are both. But if you were arguing for this particular person and he had already been removed, you would be arguing that he would have to be brought back, would you not? That is correct. Or would you say he just stays where he is? No, that's correct. As a lawful permanent resident, he would have to file a motion to reopen. Yes, well, you always have to file a motion in order to get any kind of relief. Yes. Thank you. And if I may – I know I'm over time. If I may make my second point. Quickly, please. Sure. Thank you. And the rule of lenity should prescribe how we resolve any statutory ambiguity in this case. If you have no further questions, we'll rest on our backs. Thank you very much for your argument. Thank you very much. Thank you all counsels. Good arguments today. I'll take it under advisement.